IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | Crim. No. 02-684-3 (RBK) |
| : | |
| v. : | **OPINION** |
| : | |
| ALLEN RESTO, : | |
| : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Allen Resto's Motion for a Reduction of Sentence under the First Step Act (ECF No. 578, 579), Motion to Appoint Counsel (ECF No. 582), and Motion to Supplement (ECF No. 584) (collectively, the "Motions"). For the reasons set forth below, the Court **DENIES** Resto's Motions.

**I.   BACKGROUND**

Resto is an inmate in federal custody at Federal Correctional Institute McKean ("FCI McKean") (ECF No. 581, "Gov't Opp'n" at 1). On June 6, 2005, a jury convicted Resto of conspiracy and possession with intent to distribute heroin and cocaine, violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; possessing, brandishing, discharging and using a firearm from 1998 to 2002 to further the conspiracy, violating 18 U.S.C. §§ 2, 924(c)(1)(A), and (c)(1)(C); and possessing, brandishing, discharging and using a firearm on three separate occasions during three different murders, also violating 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(C). (*Id.* at 3–4).

The Court sentenced Resto to life imprisonment on December 15, 2006, including consecutive sentences on the five counts. (*Id.* at 4). The Third Circuit affirmed the convictions

1

but ordered resentencing after a Government concession about the consecutive sentences. *United States v. Hardwick*, 544 F.3d 565, 568, 574–75 (3d Cir. 2008). At resentencing, this Court again sentenced Resto to life imprisonment, which the Third Circuit affirmed. (Gov't Opp'n at 4); *see also United States v. Hardwick*, 455 F. App'x 151, 152 (3d Cir. 2011).

Resto filed this Motion for a Reduction of Sentence under the First Step Act on January 8, 2021. Identical motions were entered onto the docket: one sealed (ECF No. 578) and one unsealed (ECF No. 579). On February 8, 2021, the Government opposed the Motion. (ECF No. 581, Gov't Opp'n). Resto replied on March 15, 2021. (ECF No. 583). Resto filed his Motion to Appoint Counsel on March 1, 2021. (ECF No. 582). He filed his Motion to Supplement on March 15, 2021. (ECF No. 584).

## II.   LEGAL STANDARD

Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The changes implemented by the First Step Act's amendment allow prisoners to directly petition the court, as opposed to the Bureau of Prisons ("BOP"), for a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i) provided, however, they satisfy the

exhaustion requirements first. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

As such, the first step for a defendant in a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) is to exhaust any available administrative remedies. Before bringing a motion for reduced sentence on their own behalf, a defendant "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020). Thirty days after submitting the request or after receipt of an adverse decision, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.* At the second step, a defendant must show that "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera*, Crim. No. 06-849, 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (*quoting United States v. Pabon*, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020)).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the United States Sentencing Commission with providing a definition. Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission provided such a definition in U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). There, the Commission explained that extraordinary and compelling reasons exist where there is:

> (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of

3

>the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver.

U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). In subsection (D) of the Application Note to U.S.S.G. § 1B1.13, there is a catchall provision that gives the Director of the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. The definition of "extraordinary and compelling reasons" has not been updated since the First Step Act's enactment.

The Third Circuit recently held that courts are not bound by Section 1B1.13's definition of "extraordinary and compelling reasons" when considering prisoner-initiated motions. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022). Nonetheless, Section 1B1.13 "still sheds light on the meaning of extraordinary and compelling reasons" and can provide a useful guide for courts considering compassionate release motions. *Id.* at 260 ("[T]he District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'").

## III.   DISCUSSION

The Court notes two points at the outset. First, Resto spends a portion of his motion attacking the validity of his sentence and conviction arguing that he is factually and actually innocent on one count of which the jury convicted him. (ECF No. 579 at 4–5). The Court declines to consider those arguments as "§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019); *United States v. McLean*, No. 21-2301, 2021 WL 5896527, at *2 (3d Cir. Dec. 14, 2021).

Second, the Government agrees that Resto exhausted his administrative remedies. (Gov't Opp'n at 14); (ECF No. 579, Appendix at 1–2). Resto sought compassionate release from the

4

FCI McKean warden, which the warden denied. (Gov't Opp'n at 14); (ECF No. 579, Appendix at 1–2). Thus, the Court must consider whether Resto has carried his burden at the analysis's second step. The Court finds that Resto has not shown that extraordinary and compelling reasons warrant a reduction in his sentence.

### A.      Extraordinary and Compelling Reasons

Resto asserts that the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting compassionate release. (ECF No. 579 at 3–4); (ECF No. 583 at 1, 4). He does not assert that he has any underlying medical condition that puts him at greater risk of COVID-19 infection or suffering more severe symptoms if he were infected. *See generally* (ECF No. 579); (ECF No. 583). Further, Resto is fully vaccinated against COVID-19. (ECF No. 587).

The mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Resto argues that "[e]veryone [at FCI McKean] is vulnerable" to COVID-19. (ECF No. 583 at 1). That is precisely the point. Most defendants who successfully move for compassionate release related to COVID-19 through § 3582(c)(1)(A) demonstrate that: (1) they are particularly vulnerable to developing severe illness from COVID-19 due to age or a medical condition(s); and (2) there is "an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held." *United States v. Somerville*, 463 F. Supp. 3d 585, 597–98 (W.D. Pa. 2020).

Resto has failed to show that he faces an actual, non-speculative risk of exposure to COVID-19 at FCI McKean. There are currently only three active cases among inmates at FCI McKean and seventeen cases among staff members. *Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Nov. 15, 2022). Since the vaccine became

available, though, FCI McKean has fully vaccinated 996 inmates. *Id.* For reference, FCI McKean currently houses 1,111 inmates. *FCI McKean*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/mck/ (last visited Nov. 15, 2022). Additionally, FCI McKean has fully vaccinated fifty-eight staff members, and that number does not include any staff who may have received their vaccine in the community, rather than a BOP facility. *Coronavirus*, https://www.bop.gov/coronavirus/.

The vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within the facility. *See United States v. Martinez*, No. CR 16-503 (KM), 2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison."). There have been no COVID-related inmate or staff deaths at FCI McKean since the beginning of the pandemic. *Coronavirus*, https://www.bop.gov/coronavirus/. Resto himself is fully vaccinated against COVID-19. (ECF No. 587). Although an underlying condition might warrant an extraordinary and compelling reason for compassionate release during the COVID-19 pandemic, *see, e.g., United States v. Stiver*, No. 17-64, 2021 U.S. Dist. LEXIS 54280 (W.D. Pa. Mar. 23, 2021), Resto does not argue that he has any such condition.

Given that Resto is fully vaccinated against COVID-19, he is substantially protected from COVID-19 infection and, in the case of breakthrough illness, from severe symptoms. *See United States v. Williams*, No. CR 11-00421-SDW-1, 2022 WL 950994, at *2 (D.N.J. Mar. 29, 2022) ("If a defendant is vaccinated, many courts have found that there is an insignificant likelihood that the defendant 'will contract COVID-19 and become seriously ill.'") (collecting cases); *United States v. Ackerman*, Crim. No. 11-740-KSM-1, 2022 WL 1214172, at *4 (E.D. Pa. Apr. 25, 2022) (collecting cases). Further, BOP offers booster shots to all inmates for additional

protection. *COVID-19 Vaccine Guidance 6*, Fed. Bureau of Prisons, at 1, 21, https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v17.pdf.

The Court does not wish to diminish Resto's concern for his health or the seriousness of the COVID-19 pandemic for those in custody. Still, Resto has not shown that his circumstances warrant release. He has failed to show that he is at a uniquely high risk for grave illness from COVID-19 given his vaccination status, lack of any underlying condition, and the availability of boosters. What's more, he has not proven that there currently exists an actual, non-speculative risk of exposure at FCI McKean given its high vaccination rate and relatively low incidence rate of COVID-19 within the facility. Thus, the Court finds there are not extraordinary and compelling reasons to justify reducing Resto's sentence or granting his early release.

### B. Section 3553(a) Factors

An analysis of the Section 3553(a) factors further supports denying Resto's motion. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

In his initial motion, Resto argues that he has taken steps to rehabilitate himself through education and work opportunities. (ECF No. 579 at 6). On the other hand, the Government argues that Resto remains a danger to the community given that Resto "led and managed an

7

extensive drug trafficking conspiracy, which included . . . committing, and causing to be committed, murders to protect" the conspiracy. (Gov't Opp'n at 17–19). In his reply, Resto took issue with the Government's contention that he remains a danger to the community, but he did not argue specifically why the Court should not consider him a continued threat. (ECF No. 583 at 5). The Court assumes this is because he rests on his rehabilitation argument.

Although the Court commends Resto for taking some positive steps toward rehabilitation during his incarceration, the Court agrees with the Government that the § 3553(a) factors weigh against release. The nature and circumstances of Resto's crimes are heinous—a jury convicted him of murdering three people on three separate occasions. The Court is also mindful of the need for the sentence imposed to protect the public from future violence and to afford adequate general deterrence. Moreover, the Court believes that the present sentence is necessary to provide Resto with just punishment and specific deterrence. Accordingly, the Court finds that the § 3553(a) factors weigh against Resto's release.

**IV.     CONCLUSION**

For the reasons expressed above, the Court **DENIES** Resto's Motion for a Reduction of Sentence under the First Step Act (ECF No. 578, 579). The Court also **DENIES** Resto's Motion to Appoint Counsel (ECF No. 582) and Motion to Supplement (ECF No. 584) **as moot**. An appropriate order follows.


Dated: November 16, 2022                              /s/ Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge