<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 02-684 (KMW) |
| Plaintiff, | **OPINION** |
| v. | |
| ALLEN RESTO, | |
| Defendant. | |

**WILLIAMS**, United States District Judge:

    **THIS MATTER** comes before the Court upon Defendant Allen Resto's ("Resto") Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 606), Motion to Supplement and Motion to Appoint Counsel (ECF No. 612) (collectively, the "Motions"). For the reasons set forth below, the Court **DENIES** Resto's Motions.

**I.    BACKGROUND**

    Resto is an inmate in federal custody at Federal Correctional Institute McKean ("FCI McKean") (ECF No. 606, "Def.'s Br." at 2). From January 1998 through September 2002, Resto, Lorenzo "Fu Quan" Hardwick, and others took part in a heroin and crack cocaine-trafficking gang in Camden, New Jersey, dubbed the "Perez Organization" by law enforcement officials. (ECF No. 608, "Gov't Opp'n" at 1 (citing Pre-Sentence Report ("PSR") ¶¶ 33-36)). The leaders of the organization were Enrique "Rick" Perez, Bernard "B-Nice" Murray, and Resto. (*Id.* (citing PSR ¶ 34)). The Perez Organization controlled several "sets" (street corners where drugs were sold) in Camden. (*Id.* (citing PSR ¶ 33)). The leaders "rented" some of the sets to individual gang members and personally managed others. (*Id.* (citing PSR ¶ 51)). The Perez Organization sold heroin at the

corners of 5th and Grant Streets, 5th and State Streets, 9th and Cedar Streets, and 26th Street and River Road, and sold crack at the corner of 7th and Vine Streets. (*Id.* (citing PSR ¶ 33)).

The Perez Organization committed murders and assaults to advance their drug-trafficking business. (*Id.* at 2 (citing PSR ¶¶ 33, 36)). The trial evidence proved three of those murders, including one in which Hardwick and Resto were directly involved. Hardwick and Arnaoldo Gomez managed the 7th and Vine Streets set. (*Id.* (citing PSR ¶¶ 33, 70)). On nearby Vine Street, Gerard Jackson sold crack from his residence, which cut into Gomez and Hardwick's business. (*Id.* (citing PSR ¶ 70)). Gomez and other members of the Perez Organization confronted Jackson and told him to stop selling crack from his house. (*Id.*) During a subsequent confrontation between Jackson on one hand, and Murray and Rick Perez on the other, Hiram "Chubby" Rosa, an associate of Jackson's, injected himself into the argument on Jackson's side. (*Id.*)

Perez and Murray, joined by Resto and Hardwick, decided to kill Rosa. (*Id.* (citing PSR ¶ 72)). On February 19, 2001, Hardwick drove a van in which Perez, armed with an AK-47 assault rifle, and Resto, armed with a .45 caliber semi-automatic handgun, hunted down Rosa. (*Id.*) They spotted him in a car parked in front of some Rutgers University dormitories. (*Id.*) Rosa drove off, but Hardwick caught up with him and cut him off. (*Id.*) Perez and Resto jumped out of the van and shot Rosa to death when he emerged from his car. (*Id.*) Hardwick dumped the van in a nearby neighborhood on the north side of Camden. (*Id.*)

By the end of February 2001, the Perez set at 9th and Cedar was having more trouble. (*Id.* (citing PSR ¶ 73)). Kenneth Allen, another local drug dealer, was selling fake drugs in the vicinity and stealing cash and heroin from the set's nearby stashes. (*Id.*) These transgressions adversely impacted the set's sales, so Perez, Murray, Resto and David Lopez, a member of the Perez Organization who managed the set, met to "discuss" the problem. (*Id.*) On March 11, 2001, Resto

and Lopez saw Allen a block away from their set and went to tell Perez and Murray. (*Id.*) The four met and decided that Allen should be killed; Murray ordered Resto and Lopez to "handle the situation." (*Id.* (citing PSR ¶ 75)).

Murray then drove Resto and Lopez back to 9th and Vine, where Resto and Lopez exited the vehicle and approached Allen. (*Id.*) Resto pulled out a gun and began pistol-whipping Allen in the face; when Allen fought back, Lopez pulled his gun and pointed it at Allen. Allen raised his hands in self-defense, and tried to run; Lopez fired several times, hitting Allen in the hand and the back. (*Id.*) Allen stumbled for nearly a block before collapsing, and Lopez shot him again from close range; Allen died from his wounds shortly thereafter. (*Id.* (citing PSR ¶ 77)). As they drove away, Murray and Resto warned Lopez to be careful and not say anything about the murder because the same thing might happen to him. (*Id.*)

In the fall of 2001, Resto was trying to expand the Perez drug operation into Pollocktown, a neighborhood in southeastern Camden. (*Id.* (citing PSR ¶ 78)). Resto identified a set run by a crack dealer, Troy James, where Resto wanted to start selling heroin supplied by Perez. (*Id.* at 2-3). James resisted this proposition, and Resto, angered by James' refusal, met with Murray at Perez's home on October 19, 2001. (*Id.* at 3 (citing PSR ¶¶ 78, 79)). Shortly after Resto and Murray conversed privately (Perez was not part of the conversation), the two left in Resto's SUV. (*Id.*) At the corner of Louis and Whitman Streets, they found James standing with a group of people. (*Id.* at 2-3 (citing PSR ¶ 80)). Murray got out of the SUV, pulled out an AK-47 semi-automatic rifle, and started shooting into the group. (*Id.*) James was shot several times, including two shots to the head at close range with a .22 caliber handgun, and died at the scene. (*Id.* (citing PSR ¶ 81)).

On February 22, 2005, a Camden, New Jersey federal grand jury issued an eight-count Superseding Indictment against Hardwick, Murray, Resto, Rodriguez, and Ramon "Flaco"

Saldana. (ECF No. 144). Count One alleged a conspiracy lasting from January 1998 to September 2002 to distribute, and possess with intent to distribute, at least one kilogram of heroin and at least 50 grams of crack, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in violation of 21 U.S.C. § 846. The indictment alleged that the defendants and others participated in the Perez Organization, which controlled street level distribution of heroin and crack at Camden drug sets. (*Id.*)

The other counts charged various firearms offenses. (ECF No. 608, Gov't Opp'n at 3). In particular, Count Four charged Resto with possessing, brandishing, discharging and using a firearm from 1998 to 2002 in furtherance of the Count One drug-trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(C), and 18 U.S.C. § 2. (*Id.*) Count Five charged Hardwick with possessing, brandishing, discharging and using a firearm from 1998 to 2002 in furtherance of the Count One drug-trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(C), and 18 U.S.C. § 2. (*Id.*) Count Six charged Murray, Resto and Hardwick with possessing, brandishing, discharging and using firearms in furtherance of the drug-trafficking conspiracy on February 19, 2001 (referring to the murder of Hiram Rosa), and in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(C). (*Id.*) Count Seven charged Murray and Resto with possessing, brandishing, discharging and using firearms in furtherance of the drug-trafficking conspiracy on February March 11, 2001 (referring to the murder of Kenneth Allen), and in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(C). (*Id.*) Count Eight charged Murray and Resto with possessing, brandishing, discharging and using firearms in furtherance of the drug-trafficking conspiracy on October 19, 2001 (referring to the murder of Troy James), and in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(C). (*Id.*)

Following a six-week trial, the jury returned verdicts of guilty on all counts. (*Id.* (citing ECF No. 272)). Additionally, the jury found beyond a reasonable doubt that the conspiracy involved at least one kilogram of heroin and at least 50 grams of crack cocaine. (*Id.* (citing ECF

No. 275, ¶¶ 2(A) and 3(A))).

On December 15, 2006, the Court sentenced Resto. The Court determined that, for the drug-trafficking conspiracy conviction, the cross-reference in U.S.S.G. § 2D1.1 to U.S.S.G. § 2A1.1 - first-degree murder guideline applied. (*Id.* at 3-4 (citing PSR ¶ 112)). That guideline established a base offense level of 43. (*Id.* at 4 (citing PSR ¶ 149)). The Court also applied a two-level upward adjustment for Resto's managerial role, pursuant to U.S.S.G. § 3B1.1(a), resulting in a total offense level of 47 for the conspiracy conviction. (*Id.* (citing PRS ¶¶ 152, 154)). The applicable Guidelines range was life imprisonment for that conviction. (*Id.* (citing PSR ¶ 186)). The Court imposed a life sentence for that conviction, 120 months' imprisonment on Count Four, 200 months' imprisonment on Count Five and 300 months' imprisonment on Count Six, to be served consecutively to each other and to the life sentence. (*Id.* (citing ECF No. 374)).

The Third Court affirmed the convictions on direct appeal but remanded for resentencing following the Government's concession that Hardwick, Murray and Resto were guilty of only a single violation of § 924(c). *United States v. Hardwick*, 544 F.3d 565, 568 (3d Cir. 2008). At the re-sentencing hearing, the Court sentenced Resto to a term of Life on Count 1 and a consecutive 120-month sentence on Count 4. (ECF No. 422). The Third Circuit affirmed Resto's sentence. *See United States v. Hardwick and Resto*, 455 F. App'x. 151, 152-153 (3d Cir. 2011) (finding that Court of Appeals mandate did not permit district court to consider defendants other challenges to their sentences and the Fair Sentencing Act could not be applied retroactively).

Thereafter, Resto filed a *pro se* Petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (ECF No. 608 at 4). Resto's petition raised "five issues in his motions; specifically: 1) failure to object to this Court's lack of jurisdiction to impose a sentence for murder; 2) failure to object to this Court's lack of Article III jurisdiction over the underlying case; 3) failure

to object to the federal government's lack of standing to prosecute Petitioner; 4) failure to object to the lack of a grand jury indictment and notice of murder case; and 5) a challenge that 924(c) is void-for-vagueness in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015)."[1] *Resto v. United States*, 2017 WL 2507003, at *1 (D.N.J. June 9, 2017). On June 9, 2017, the Court denied the petition. (ECF No. 608 at 4).

On January 3, 2019, Resto filed a *pro se* motion for a reduction of his sentence pursuant to the First Step Act of 2018. (ECF No. 541). On August 26, 2019, Hardwick filed a *pro se* motion for a reduction of his sentence pursuant to the First Step Act of 2018. (ECF No. 608 at 4). Both motions were denied by the Court. (*Id.*; ECF No. 542). Hardwick appealed to the Third Circuit. (ECF No. 608 at 4). The Court of Appeals remanded Hardwick's case to this Court for additional findings, and this Court appointed counsel to represent both Hardwick and Resto. (*Id.*; ECF No. 558). Ultimately, on August 28, 2020, the Office of the Public Defender filed supplemental motions for sentence reduction under the First Step Act on behalf of Hardwick and Resto. (*See* ECF Nos. 564, 608 at 4). On October 2, 2020, the Government filed its response. (ECF No. 566).

On November 6, 2020, the Court held a hearing on Resto's First Step Act motion. (ECF No. 570). After hearing argument of counsel, the Court ruled that since the Indictment charged a dual object drug distribution conspiracy (crack-cocaine and heroin) Resto was eligible for a reduction. (ECF No. 608 at 5). However, the Court found that the changes to the crack-cocaine guidelines range had no effect on Resto's overall sentencing guideline range as the murder cross-reference applied. (*Id.*) Based on Resto's involvement in the three drug related murders, the Court declined to exercise its discretion and re-affirmed Resto's sentence of Life. (ECF No. 572). Resto appealed the Court's ruling to the Third Circuit. (ECF No. 573). On January 14, 2022, the Third

---

[1] As the Court noted, "[a]ll but one of [Resto's] claims implicate[d] whether he received ineffective assistance of counsel." *Resto*, 2017 WL 2507003, at *2.

Circuit issued its mandate affirming the denial of Resto's (and Hardwick's) sentence reduction motion. (ECF No. 588).

On January 8, 2021, Resto filed a Motion for a Reduction of Sentence under the First Step Act with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "changes made to the compassionate release statute by way of the FSA for any and all extraordinary and compelling reason; second . . . Petitioner is actually and factually innocent of discharging a firearm as charged in count four. Third reason is the Covid-19 pandemic. Fourth reason is Petitioner's extraordinary rehabilitation while incarcerated." (ECF No. 579 at 4). On February 8, 2021, the Government filed its response opposing the motion. (ECF No. 581). On January 3, 2022, the Court ordered the Government to advise the Court of Resto's COVID-19 vaccination status. (ECF No. 586). On January 5, 2022, the Government advised the Court that Resto was vaccinated against the COVID-19 virus. (ECF No. 587, Ex. A).

On November 16, 2022, the Court denied Resto's motions for Reduction of Sentence under the First Step Act. (ECF No. 596-97). The Court noted that Resto claimed that he was "factually and actually innocent of one count of which the jury convicted him . . . The Court declines to consider those arguments as '§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity.'" (ECF No. 596 at 4 (quoting *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019))). The Court then addressed a fully vaccinated Resto's potential exposure to COVID-19 and the attendant risks and found that he "failed to show that he faces an actual, non-speculative risk of exposure to COVID-19 at FCI McKean." (ECF No. 596 at 5). The Court then turned to the § 3553(a) factors and found that while Resto took "positive steps toward rehabilitation during his incarceration," the nature and circumstances of the crime dictated that Resto should remain detained. (ECF No. 596 at 8). The Court concluded that

"Resto's crimes are heinous—a jury convicted him of murdering three people on three separate occasions." (*Id.* at 8). The Court noted it is "mindful of the need for the sentence imposed to protect the public from future violence and to afford adequate general deterrence," and found that "the present sentence is necessary to provide Resto with just punishment and specific deterrence." (*Id.*).

On April 12, 2024, Resto filed a "Reinstatement/Renewal Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582 and in light of *United States v. Concepcion* and other factors made by Resto which [are] stated therein and in previous[ly] filed motions." (ECF No. 606 at 3). On August 15, 2024, Resto filed a Motion to Supplement based on *Alleyne v. United States*, 570 U.S. 99 (2013) and Motion to Appoint Counsel (ECF No. 612). The Court now addresses these Motions.

## II. LEGAL STANDARD

The changes implemented by the First Step Act allow prisoners to directly petition the sentencing court for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). First, however, prisoners must satisfy the administrative exhaustion requirements laid out in the statute. *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *2 (D.N.J. May 15, 2020). To exhaust administrative remedies, a defendant must present her request for compassionate release to the warden of his prison. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). Thirty days after submitting the request or receiving a denial, whichever is earlier, the defendant may move for compassionate release in the district court.[2] *Id.*

A court may reduce a defendant's term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with

---

[2] The Court found in its November 16, 2022 Opinion deciding the Motion for Compassionate Release that Resto now asks the Court to reconsider, (*see* ECF No. 606 at 3), that Resto "exhausted his administrative remedies." (ECF No. 596). The Government does not dispute that Resto has exhausted his administrative remedies with respect to the instant Motions. (*See* ECF No. 606 at 4-5; *see generally* ECF No. 608).

8

applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The sentencing factors under 18 U.S.C. § 3553(a) require courts to consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant. *Id.* "Compassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-1011, 2023 WL 4198042, at *1 (3d Cir. June 27, 2023); *see also United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (holding that the district court acted within its discretion to deny compassionate release based on the § 3553(a) factors even where the Government did not dispute that extraordinary and compelling reasons were present). The defendant bears the burden of showing that he is entitled to compassionate release. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the U.S. Sentencing Commission (the "Commission") with providing further guidance. Congress's only instruction on this point was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission amended the Guidelines effective November 1, 2023. *See United States v. Tobolsky*, Crim. No. 21-303, 2024 WL 323476, at *2 (D.N.J. Jan. 29, 2024). As part of the amended Guidelines, the Commission updated a policy statement regarding when a reduction in a term of imprisonment may be appropriate under 18 U.S.C. § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13 (the "Policy Statement"). The Policy Statement states in relevant part:

> (a) In General.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) extraordinary and compelling reasons warrant the reduction; . . .
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) The reduction is consistent with this policy statement.

The Policy Statement further provides that a nonretroactive change in law can be considered an extraordinary and compelling reason to warrant a sentence reduction for an "[u]nusually [l]ong [s]entence," as follows:

> if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Recently, the Third Circuit addressed the question raised by the instant Motions as to whether a change in law that Congress deemed nonretroactive could be considered an "extraordinary and compelling reason" to warrant a sentence reduction.[3] *United States v. Rutherford*, 120 F.4th 360, 372 (3d Cir. 2024). The appellate panel held that "because (b)(6) states that changes in law *may* (not must) be considered, judges are not required to consider a change in law when determining a prisoner's eligibility for compassionate release. Thus, (b)(6) gives judges

---

[3] While the Third Circuit initially held in *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021) that a nonretroactive change in law could not establish an "extraordinary and compelling" reason for a sentence reduction, the Sentencing Commission thereafter promulgated U.S.S.G. § 1B1.13(b)(6). Thus, *Rutherford* determined "the effect of (b)(6) on *Andrews*." 120 F.4th at 371.

the opportunity, but not a mandate, to consider changes in the law under the defined circumstances."[4] *Rutherford*, 120 F.4th at 367. "Judges therefore have two levels of discretion under (b)(6): first, whether to consider a change in law when determining a prisoner's eligibility for compassionate release, and second, the usual discretion when deciding if an eligible prisoner should receive a sentence reduction after considering the § 3553(a) factors." *Id.*

While the Government in *Rutherford*, as here, argued that (b)(6) is invalid because it "exceeds the Commission's statutory authority to define the bases of compassionate release," the panel "consider[ed] only whether (b)(6) is binding on a court's compassionate release eligibility determinations when deciding a motion based in whole or in part on the First Step Act's change to § 924(c)." *Id.* at 375. The panel held that (b)(6), "as applied to the First Step Act's modification of § 924(c), conflicts with the will of Congress and thus cannot be considered in determining a prisoner's eligibility for compassionate release." *Id.* at 376. The panel reasoned that "Congress explicitly made the First Step Act's change to § 924(c) *non*retroactive. . . . [and] specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." *Id.* (citing Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 and *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021)).

Thus, the panel concluded that it will "not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release[,]" because "[s]uch an interpretation would sow conflict within the statute." *Id.* (quoting *Andrews*, 12 F.4th at 261). "Simply put, allowing the change to § 924(c) to be considered when determining compassionate release eligibility does not align with 'the specific directives [that] Congress' set

---

[4] The Third Circuit further noted that while the Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) overturning *Chevron* deference to agency interpretation was made in the context of the Administrative Procedures Act, under which the Commission is not an agency, "*Loper Bright* is still instructive as we assess the assertion that the Commission's view of a statute should trump our own." *Rutherford*, 120 F.4th at 379.

forth in the First Step Act." *Id.* The panel noted that, "at bottom, [its] holding in *Andrews* was that the nonretroactive change to § 924(c), whether by itself or in combination with other factors, cannot be considered in the compassionate release eligibility context. *Id.* at 378. In sum, the panel held that "[w]hen it comes to the modification of § 924(c), Congress has already taken retroactivity off the table, so [the court] cannot rightly consider it." *Id.*

## III.    DISCUSSION

Resto argues that his sentence should be reduced because: (1) a change in law to the statutory penalties for crack/cocaine, § 841(b), constitutes an "extraordinary and compelling circumstance"; (2) the Section 3553(a) factors weigh in favor of reducing his sentence; (3) he is otherwise eligible for compassionate release under the First Step Act; (4) the imposition of his mandatory life sentence without parole for crimes he allegedly committed as a "youth" violates the Eighth Amendment; and (5) he is serving "hard time" at FCI-McKean. (ECF No. 606). The Court finds that Resto has not established that these reasons merit a reduction to his sentence.[5]

### a.  Extraordinary and Compelling Reasons

Resto posits that the following circumstances constitute "extraordinary and compelling reasons" warranting a reduction of his sentence: (1) the "health risks presented by the Covid-19 pandemic," (Def.'s Br. at 13); (2) "his personal rehabilitation" while incarcerated, (*id.*); (3) the "[g]ross [d]isparity" between his sentence and that of his co-defendant, (*id.* at 20); and (4) the Fair Sentencing Act of 2010's modification of statutory penalties for crack/cocaine pursuant to 21 U.S.C. § 841(b), (*id.* at 21-23).

---

[5] Resto asks this Court to "consider all facts and legal propositions that have changed since [his] initial sentencing." (ECF No. 606 at 10). "Put simply, the First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction . . . . Nor does the First Step Act require a district court to make a point-by-point rebuttal of the parties' arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it." *United States v. Concepcion*, 597 U.S. 481, 502 (2022).

At the outset, the Court notes that it already rejected several of these arguments in deciding Resto's previous Motion for Compassionate Release. To the extent Resto asks the Court to reconsider whether his rehabilitative progress warrants a reduction in sentence, the Court reiterates that "[r]ehabilatation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Resto reasserts that the COVID-19 pandemic warrants a reduction in his sentence, notwithstanding that he is vaccinated against the virus. (ECF No. 587, Ex. A). For the same reasons stated in the Court's prior Opinion dated November 22, 2022, the Court finds that Resto has not satisfied his burden of demonstrating extraordinary and compelling reasons to reduce his sentence on the foregoing grounds. (*See* ECF No. 596 at 5-7).

Resto argues that nonretroactive changes to the statutory penalties for § 841(b) constitute "extraordinary and compelling reason[]," however, the Third Circuit's holdings in *Andrews* and *Rutherford* analyzing the modification to § 924(c) make clear that where "Congress has already taken retroactivity off the table, . . . [the court] cannot rightly consider it." *Rutherford*, 120 F.4th at 378. Resto offers no argument to distinguish why this Court should reach a different result in the context of § 841(b), nor does Resto address *Andrews*' holding whatsoever. (*See* ECF No. 606). Thus, the Court finds that the nonretroactive changes to the statutory penalties for § 841(b) do not constitute an "extraordinary and compelling reason" to reduce Resto's sentence.

Resto also seeks a reduction in his sentence on the grounds that he is allegedly serving "hard time." (ECF No. 606 at 36-37). As the Government notes, Resto cites to no authority to support the proposition that the conditions of an inmate's confinement can be an "extraordinary and compelling reason" pursuant to the First Step Act. (ECF No. 608 at 16). Notably, "[r]ecognizing this limitation, other district courts have denied similar motions." *United States v. Fragale*, No. 5:17-CR-00112-1, 2023 WL 3440386, at *2 (S.D.W. Va. May 12, 2023) (citing

*United States v. Valencia*, No. 1:16-CR-00200-JLT-SKO, 2022 WL 2704253 (E.D. Cal. July 12, 2022) and *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202 (E.D. Mich. May 7, 2021)). This Court is likewise persuaded that Resto's allegation that he is serving "hard time" is not an "extraordinary and compelling reason" to reduce his sentence.

Similarly, Resto's reliance on *Miller v. Alabama*, 567 U.S. 460, 465 (2012) for the proposition that he is entitled to additional protections to ensure "youths" are "protected by cruel and unusual punishments in violation of their Eight[h] Amendment rights under the Constitution" is of no moment. (ECF No. 606 at 33-35). Resto's "constitutional arguments related to *Miller v. Alabama* fail because *Miller* prohibits sentencing those under the age of 18 at the time of their offense to life without parole." *United States v. Jones*, No. CR 07-143 (SRC), 2023 WL 2986928, at *5 (D.N.J. Apr. 18, 2023), *reconsideration denied*, No. CR 07-143 (SRC), 2023 WL 3510898 (D.N.J. May 16, 2023). Resto does not assert that at the time of his offenses he was "under the age of 18," and the First Step Act did not increase the age identified in *Miller*.[6] *Id.* Moreover, "[t]o the extent [Resto] asserts the Court should grant compassionate release because of his age at the time of the offense, that argument is meritless because age at the time of an offense cannot be an extraordinary and compelling circumstance." *Id.* Resto's "age is not an unanticipated circumstance that the Court was unable to take into account at sentencing" and thus "cannot constitute an extraordinary and compelling circumstance." *Id.*

Accordingly, the Court finds that Resto has failed to satisfy his burden of establishing that "extraordinary and compelling reasons" justify a reduction of his sentence.

---

[6] Resto committed the offenses "[f]rom in or about January 1998, to in or about September 2002." (ECF No. 375 at 1). Resto's date of birth is September 20, 1979. (PSR at 2). Thus, Resto was 18 years old at the time of his offenses.

b. **The Section 3553(a) Factors**

While the Court need not evaluate the Section 3553(a) factors where a defendant, as here, fails to demonstrate "extraordinary and compelling reasons," the Court will nonetheless address those factors because they provide an independent basis for denial of compassionate release. *See United States v. Babbs*, No. CR 15-195 (GC), 2023 WL 4686323, at *5 (D.N.J. July 21, 2023). The Court finds that the Section 3553(a) factors weigh heavily against Resto's request for compassionate release. The Section 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

18 U.S.C. § 3553(a).

With respect to Resto's argument that the disparity in his sentence with that of his co-defendant support a sentence reduction, the Court notes that Resto's co-defendant accepted a plea bargain, while Resto acknowledges that he rejected the Government's plea offer and exercised his right to a jury trial. (ECF No. 606 at 5). Resto asserts that "his mandatory life sentence was not due to his actual culpability in the offense, but because of a trial penalty" for his rejection of the plea offer. (*Id.*) To the extent Resto challenges the validity of his sentence based on his "actual culpability," (*id.*), "§ 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a

sentence, not to challenge its validity." *Handerhan*, 789 F. App'x at 926. Accordingly, 18 U.S.C. § 3553(a)(6) offers Resto no refuge.

As the Court found in deciding Resto's previous Motion for Compassionate Release, "Resto's crimes are heinous—a jury convicted him of murdering three people on three separate occasions." (ECF No. 596 at 8). Moreover, the Court finds that Resto's ongoing denial of his culpability for these murders, as articulated in the instant Motions, further demonstrates that his sentence is necessary to protect the public from future violence, provide just punishment, and offer adequate general and specific deterrence. Accordingly, the Court finds that the § 3553(a) weigh decidedly against a reduction of Resto's sentence.

   c. **Motion to Supplement**

Resto seeks permission to supplement his Compassionate Release Motion based on *Alleyne v. United States*, 570 U.S. 99 (2013) (holding that facts that increase mandatory minimum sentences must be submitted to the jury). *Alleyne* is inapposite here, as the Third Circuit has held that "*Alleyne* cannot be applied retroactively to cases on collateral review." *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014).

Furthermore, the record reflects that the facts which triggered Resto's mandatory minimum sentence were indeed presented to the jury as *Alleyne* requires. The jury found that Resto was part of a conspiracy to distribute more than 1 kilogram of heroin and a firearm was discharged in furtherance of that conspiracy. (ECF No. 275 at 1, 3, 5). The jury also found that Resto: (1) discharged a firearm during the murder of Hiriam Rosa on February 19, 2001 (*id.* at 8); (2) used a firearm during the murder of Kenneth Allen on March 11, 2001 and that it was reasonably foreseeable to Resto that a co-conspirator would use, brandish or discharge a firearm (*id.* at 11); and (3) possessed a firearm during the murder of Troy James on October 19, 2001 and that it was

16

reasonably foreseeable to Resto that a co-conspirator would use, brandish or discharge a firearm (*id.* at 13). These findings triggered mandatory minimum sentences and no further judicial factfinding took place which increased these mandatory minimum terms as *Alleyne* proscribes.

Accordingly, the Court denies Resto's request to supplement his Compassionate Release Motion based on *Alleyne*.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Resto's Motion for a Reduction of Sentence under the First Step Act (ECF No. 606), Motion to Supplement and Motion to Appoint Counsel (ECF No. 612). An Order consistent with this Opinion will be entered.

Dated: December 30th, 2024

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[7] Resto also requests, without briefing the issue or citing any supporting legal authority, the appointment of counsel in support of his Motion for Compassionate Release. (ECF No. 612 at 6). As Resto's grounds for seeking a sentence reduction are without merit, the Court denies Resto's Motion to Appoint counsel as moot. (*See* ECF No. 596 at 8).